E-FILED
Tuesday, 23 December, 2025  04:38:55 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

ALEXANDER EDWARDS-HINTON )
    Plaintiff, )
     )
    v. ) Case No. 3:25-cv-03138-SEM
     )
LATOYA HUGHES *et al.* )
    Defendants. )

## MERIT REVIEW ORDER

**SUE E. MYERSCOUGH, United States District Judge:**

Before the Court is a Complaint (Doc. 1) under 42 U.S.C. §
1983, a Motion for Counsel (Doc. 5), and a Motion for Status (Doc.
6) filed by Plaintiff Alexander Edwards-Hinton, an inmate at
Pinckneyville Correctional Center.

The Court concludes that Plaintiff's pleading states Eighth
Amendment claims but denies the Plaintiff's Motion for Counsel,
which renders moot the Motion for Status.

### I. COMPLAINT

### A. Screening Standard

The Court must "screen" Plaintiff's Complaint and dismiss any
legally insufficient claim or the entire action if warranted. 28 U.S.C.
§ 1915A. A claim is legally insufficient if it "(1) is frivolous,

malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Alleged Facts

Plaintiff's Complaint alleges violations at Western Illinois Correctional Center against Illinois Department of Corrections Director Latoya Hughes; Warden Brittany Greene; Administrative Review Board Chairperson John Loftus; Corrections Sergeants Alex W. McAdams and Smith; Corrections Officers J. Hall, Siverly, and Slats; Hearing Investigator T. Shaw;  and Adjustment Committee ("Committee") Members Corey J. Holzer and Silvester N. Erude.

On February 9, 2023, Plaintiff noticed Defendant McAdams looking at Plaintiff "with an expression of distaste." (Pl. Compl., Doc.

Page **2** of **12**

1 at 5:17.) Plaintiff observed McAdams became angry after Plaintiff asked why McAdams was looking at Plaintiff in that manner.

After Plaintiff complied with McAdams' subsequent order to stop and submit to a search, Plaintiff began walking to breakfast when McAdams shoved Plaintiff in the back. Plaintiff stumbled forward and instinctively turned around into a "defensive stance." (*Id.* at 6:21.) Plaintiff claims that McAdams slammed Plaintiff against the foyer wall despite complying with McAdams's order to submit to restraints, which caused Plaintiff severe shoulder pain. Thereafter, Plaintiff was escorted to restrictive housing.

Plaintiff asserts that he "pleaded in protest to other John Doe Correctional Officer that [Defendant] McAdams' actions [were] wrong … as they stood watch and failed to intervene." (*Id.* at 6:23.) The Court notes that Plaintiff's pleading identified three separate John Doe individuals, followed by a parenthesis that includes the names of Defendants Hall, Siverly, and Slats.

Plaintiff later appeared before Defendants Holzer and Erude, acting as Committee members, where Plaintiff was informed that he was charged with violating the rule against assault. Plaintiff claimed he had not received notice of the alleged violation, asserting that

Defendant Smith was responsible for ensuring service of process of the disciplinary report. Plaintiff requested a continuance to gather facts, call witnesses, and allow the Committee to review the video evidence of the incident. The Committee determined that Plaintiff had committed the offense. Plaintiff does not state what restrictions, if any, were imposed as a result.

Plaintiff claims that Defendants Hughes, Loftus, and Shaw failed to conduct a proper investigation into the alleged rule violation and that Defendant Greene was responsible for conducting an impartial disciplinary hearing and reviewing all grievances.

### C. Analysis

In an excessive force claim, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). "Several factors are relevant in determining whether a defendant applied force in good faith or for purposes of causing harm, including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of the force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d

467, 477 (7th Cir. 2009); *see also Santiago v. Walls*, 599 F.3d 749, 757 (7th Cir. 2010).

Plaintiff's account is sufficient to state an excessive force claim against Defendant McAdams.

The Seventh Circuit has "long held that as long as procedural protections are constitutionally adequate, [courts] will not overturn a disciplinary decision solely because evidence indicates the claim was fraudulent." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *Id.*

"*Wolff v. McDonnell*[, 418 U.S. 539, 558 (1974),] sets forth the minimum due process requirements for prison disciplinary proceedings when the prisoner has been charged with serious misconduct which could result in loss of good time credits, punitive segregation, or which might also be punishable in state criminal proceedings." *Chavis v. Rowe*, 643 F.2d 1281, 1285 n.3 (7th Cir. 1981).

However, when an inmate's "sanction is less onerous" than revocation of good time credits, prison officials "need not use all of

the procedures required by *Wolff* when reaching decisions." *Sylvester v. Hanks*, 140 F.3d 713, 715 (7th Cir. 1998). An inmate is entitled to only informal, nonadversary procedures when "the State's interest implicates the safety of other inmates and prison personnel." *Wilkinson v. Austin*, 545 U.S. 209, 228–29 (2005); *see also Westefer v. Neal*, 682 F.3d 679, 684-86 (7th Cir. 2012) (concluding that informal, nonadversary procedures do not involve the right to call or cross-examine witnesses, record evidence, receive a written decision, or administrative appeal).

"[I]nformal due process requires only that an inmate is provided (1) 'notice of the reasons for the inmate's placement' in segregation and (2) 'an opportunity to present his views,' for instance, in a written statement or at a hearing." *Ealy v. Watson*, 109 F.4th 958, 966 (7th Cir. 2024) (quoting *Adams v. Reagle*, 91 F.4th 880, 895 (7th Cir. 2024). "[T]he Supreme Court has made clear that '[o]rdinarily a written statement by the inmate will accomplish this purpose .... So long as this occurs, and the decisionmaker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied.'" *Adams*, 91 F.4th at 895 (quoting *Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Due process

Page **6** of **12**

is also satisfied if a plaintiff presents his arguments orally during the Committee hearing. *Adams*, 91 F.4th at 896.

Because Plaintiff asserts that he was not provided a copy of the disciplinary report before appearing before the Committee hearing on the alleged rule violation at issue, Plaintiff stated a Fourteenth Amendment due process claim against Defendants Erude, Holzer, McAdams, and Smith. However, Plaintiff fails to state a claim against the remaining Defendants.

To succeed on a claim for failure to intervene, a plaintiff must demonstrate that the defendant "(1) knew that a constitutional violation was committed; and (2) had a realistic opportunity to prevent it." *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017); *see also Wilborn v. Ealey*, 881 F.3d 998, 1007 (7th Cir. 2018) ("An officer who fails to intervene to try to prevent known cruel or unusual force, despite a reasonable opportunity to do so, may be held liable under § 1983.").

Plaintiff's facts are insufficient to state a failure to intervene claim against Defendants Hall, Siverly, and Slats, as Plaintiff does not provide any facts regarding their individual location relative to

Plaintiff to infer they had the opportunity to intervene after Plaintiff admittedly took an aggressive step toward Defendant McAdams.

Plaintiff also fails to state a claim against Defendants Hughes, Loftus, and Shaw for failing to conduct a proper investigation into the alleged rule violation. *See Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995) (concluding that a prisoner "has no federal due process right to a prehearing investigation . . . .").

Plaintiff also fails to state a claim against Defendant Greene because Plaintiff does not allege Greene's personal involvement at the Committee hearing at issue, and the Illinois Department of Corrections grievance procedures do not establish grounds for a constitutional violation. *See Aguilar v. Gaston-Camara*, 861 F.3d 626, 630 (7th Cir. 2017) ("[Section] 1983 does not establish a system of vicarious liability; a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution."); *see also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance.").

## II.    COUNSEL AND STATUS

Plaintiff has no constitutional right to counsel, and the Court cannot require an attorney to accept pro bono appointments in civil cases. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992) (holding that although indigent civil litigants have no constitutional right to counsel, a district court may, in its discretion, request counsel to represent indigent civil litigants in certain circumstances). In considering Plaintiff's motion for counsel, the Court must ask two questions: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Plaintiff's Motion for Counsel (Doc. 5) is denied because he has not satisfied his threshold burden of demonstrating that he has attempted to hire counsel, which typically requires writing to several lawyers and attaching the responses received. Plaintiff's Motion for Status (Doc. 6) is moot with the entry of the Court's Order.

Page **9** of **12**

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Counsel (Doc. 5) is DENIED.**

2) **Plaintiff's Motion for Status (Doc. 6) is MOOT.**

3) **According to the Court's screening of Plaintiff's Complaint [1] under 28 U.S.C. § 1915A, Plaintiff states an Eighth Amendment claim for excessive force against Defendant McAdams and a Fourteenth Amendment due process claim against Defendants Erude, Holzer, McAdams, and Smith. Plaintiff's claim against Defendants proceeds in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

4) **The Clerk of the Court is DIRECTED to terminate Brittany Greene, J. Hall, Latoya Hughes, John Loftus, Shaw, Siverly, and Slats.**

5) **This case is now in the process of service. The Court recommends that Plaintiff wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

6) **The Court will attempt service on Defendants by mailing a waiver of service. Defendant has sixty days from service to file an Answer. If Defendants have not filed their respective Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive deadlines.**

7) If a defendant no longer works at the address provided by Plaintiff, the entity for whom Defendant worked while at that address shall submit to the Clerk Defendant's current work address or, if not known, Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be kept only by the Clerk and shall not be kept in the public docket nor disclosed by the Clerk.

8) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses proper under the Federal Rules. The Answer and later pleadings shall be to the issues and claims stated in this Order. An answer sets forth the Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Court. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel files an appearance and the Court enters a scheduling order, which will provide more detailed information about the discovery process.

10) Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange

the time for the deposition.

11) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.**

12) **If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).**

13) **The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

14) **The Court directs the Clerk to attempt service on Defendants under the standard procedures.**

**ENTERED December 23, 2025.**

s/ *Sue E. Myerscough*

_____

SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE